**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Joseph Robert Cox, d.b.a. JoeKen Firearms, )<br><br>                Plaintiff, )<br><br>v. )<br><br>United States of America: Department of) the Treasury: Bureau of Alcohol, Tobacco,) Firearms & Explosives [A.T.F.], an          ) Agency thereof; Alcohol and Tobacco Tax) and Trade Bureau [A.T.T.T.], an Agency) thereof; R.A. ["RAY"] Friend, a Special) Agent therein [A.T.F.]; Heidi Peterson, a) Special Agent therein [A.t.f.]; James D.   ) Jewell, an Investigator therein [A.T.T.T.];) Tim Foster, an Excise Tax                      ) Auditor    therein    [A.T.T.T.];   Twenty) Unknown Agents [A.T.F. & A.T.T.T.]       )<br>                                                               )<br>                Defendants.                      ) | No. CV 07-1200-PHX-SMM<br><br>**ORDER** |

Currently pending before the Court is Petitioner Joseph Cox's Rule 41(g) Petition for Return of Property (Doc.2).  As a preliminary matter, the Court must determine whether it has jurisdiction to decide the merits of the Petition before it.

Petitioner filed the instant Petition for Return of Property pursuant to Fed. R. Crim. P.41(g), which provides "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." A Petition may be construed as a "civil equitable proceeding." *Purcell v. U.S.*, 908 F.2d 434, 437-38 (9ᵗʰ Cir.

1990).  "To prevent the district courts from exercising their equitable jurisdiction too liberally, the circuit courts have enumerated certain factors that must be considered before a district court can reach the merits of a preindictment....motion. *Ramsden v. U.S.,* 2 F.3d 322, 324 (9th Cir.1993). "Equitable jurisdiction provides district courts with "the power to entertain motions to return property seized by the government when there are no criminal *proceedings* pending against the movant." *Ramsden*, 2 F.3d at 324; *see also Meier*, 521 F.2d at 554 (noting that the "equitable jurisdiction" power has been used for "independent, preindictment suits in equity seeking the suppression and return of illegally obtained evidence"). However, that power is not meant to be applied liberally; instead, it "should be exercised sparingly," *Guerra v. United States*, 645 F. Supp. 775, 778 (C.D. 1986), and only with "caution and restraint." *Ramsden*, 2 F.3d at 324; *Meier*, 531 F.2d at 554.

Here, the government has initiated a criminal investigation against Petitioner, but that investigation has not resulted in an indictment. Thus, as there are no criminal proceedings pending against the plaintiff, this Court may not review Petitioner's claims pursuant to Fed. R. Crim. P. 41(g), unless the Court invokes its power to entertain motions via "equitable jurisdiction." To do so, under the mandates of *Ramsden*, the Court must consider the following four factors: (1) whether the Government displayed a callous disregard for the constitutional rights of the petitioner; (2) whether the petitioner has an individual interest in and need for the property he wants returned; (3) whether the petitioner would be irreparably injured by denying return of the property; and (4) whether the petitioner has an adequate remedy at law for the redress of his grievance. *Ramsden*, 2 F.3d at 325. The Court will briefly address the individual factors as follows:

**(1) Callous Disregard**

Petitioner contends that the government exhibited callous disregard for his constitutional rights when it seized his property, and as such, he argues that he is entitled to the return of his property that was seized in April 2006 and March 2007.  In order to be entitled to a return of his property, Petitioner must establish that the government's conduct

was "sufficiently reprehensible" to warrant the return of his property.

In *Ramsden v. Untied States*, the Ninth Circuit identified governmental actions which displayed a callous disregard of constitutional rights to warrant the return of petitioner's property.   In Ramsden, Petitioner was arrested by two U.S. marshals in his hotel room on July 23, 1991.   Prior to the arrest, the District Court for the Central District of California issued a provisional arrest warrant for Ramsden at the request of the British government. Id. After arresting Ramsden outside his hotel room, Ramsden was permitted to reenter his room in order to change clothes. *Id*. at 324.  The marshals escorted Ramsden inside the room, at which time they noticed loose papers on the desk and floor, they also saw a suitcase and briefcase near the desk. *Id*. In order to confirm that there were no concealed weapons in the room, the marshals opened the suitcase and briefcase.  *Id*.  Instead of seeing weapons in the bags, the marshals saw miscellaneous documents. Thereafter, they consulted with the International Criminal Police Organization (Interpol), and they seized the documents in the room as potential evidence for the British authorities. *Id*.

On September 12, 1991, a British official reviewed a portion of the seized documents, finding several documents relevant to his office's investigation of Ramsden.   *Id*. On September 30, 1991, Ramsden petitioned to have the seized documents returned to him pursuant to Rule 41(e). *Id*. On December 9, 1991, the district court granted Ramsden's petition, concluding that under the circumstances, equity demanded that the seized documents be returned to Ramsden without giving the Government the opportunity to copy them.  *Id*.  The Court explained that because no warrant was obtained and no exception to the warrant requirement existed, the government had impinged upon Petitioner's constitutional rights. *Id*.  The Court found that, despite the fact that the government had the opportunity to secure a warrant, it chose not to comply with its obligations under the Fourth Amendment. *Id*.  The Ninth Circuit held that the search and seizure of property in Ramsden violated the Fourth Amendment and that the unexcused failure to obtain a search warrant amounted to a callous disregard for Ramsden's constitutional rights. *Id*.  at 323-24.

- 3 -

1    In the present case, the government did in fact obtain search warrants.  Furthermore,

2    the searches of Petitioner's premises and seizures of property were pursuant to valid warrants

3    issued by a United States Magistrate Judge.   The warrants were issued subsequent to

4    establishing probable cause to believe that the legitimate objects of the search were located

5    in the particular place to be searched, and therefore  petitioner's interest in the privacy of his

6    business and possessions were  safeguarded against any potential unjustified intrusion of the

7    agents. *See Steagald v. United States, 451 U.S. 204, 213 (1981); See also New York v.*

8    *Burger*, 482 U.S. 691, 699-700 (1987) (The Fourth Amendment protects not only private

9    homes for unreasonable search and seizure, but also commercial buildings, although a

10   business owner's expectation of privacy in commercial premises is different from, and less

11   than, his expectation of privacy in a home.) "The critical element in a reasonable search is

12   not that the owner of the property is suspected of crime but that there is reasonable cause to

13   believe that the specific 'things' to be searched for and seized are located on the property to

14   which entry is sought." *Zucher v. Stanford Daily*, 436 U.S. 547, 556 (1978); *United States*

15   *v. Hayes*, 231 F.3d 630 (9 Cir. 2000)."[T]he correct inquiry is whether there was a reasonable

16   cause to believe that evidence of ... misconduct was located on the property that was

17   searched.") *United States v. Taketa*, 923 F.2d 665, 674 (9 Cir. 1991).

18   Even assuming that the warrants were based on insufficient probable cause, the

19   searches were not illegal where, as here, the agents relied in good faith on the warrant's

20   validity, and the magistrate relied in good faith on the agent's establishment of probable

21   cause. *United States v. Leon*, 468 U.S. 897 (1984). The reliance must be objectively

22   reasonable. *Id*. at 922. "Because the purpose of the exclusionary rule is to deter police

23   illegality, we will not suppress evidence when a magistrate, not the officer, errs." *Id*. at 921.

24   Petitioner however contends that the warrants lacked specificity in violation of the

25   Fourth Amendment.  The Fourth Amendment specificity requirement prevents agents from

26   engaging in general, exploratory searches by limiting their discretion and providing specific

27   guidelines regarding what can and cannot be searched.  The Fourth Amendment limits the

28                                                    - 4 -

discretion of the agents by requiring the description of searches to be sufficiently specific so as to enable the person conducting the search reasonably to identify the things authorized to be seized. *See United States v. Silva*, 247 F.3d 1051, 1057 (9th Cir. 2001); *United States v. McClintock*, 748 F.2d 1278, 1282 (9th Cir. 1984).

Critical to the determination of whether the Fourth Amendment has been violated by an unlawful search and seizure is analyzing the nature of the evidence being sought because the level of detail necessary in a warrant is related to the particular circumstances and the nature of the evidence sought. *See United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). For example, warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible. *Id.* Even an "extraordinarily broad" warrant authorizing the seizure of essentially all business records may be justified where there is probable cause to believe that the crime involved "permeated the entire business operation." *United States v. Offices Known as 50 State Disturb. Co.*, 708 F.2d 1371, 1374 (9 Cir. 1983).[1]

After reviewing the warrants, the Court finds that there was probable cause to search the property described therein. Given the nature of the crimes alleged, which potentially permeated Petitioner's business, the warrants objectively described the items to be searched and seized with reasonable specificity, which adequately restricted the discretion of the agents executing the warrants. *Id.*

Next, Petitioner contends that the manner in which the warrants were executed, more specifically the fact that the March 7, 2007 warrant was missing 'Attachment B' upon the agents' arrival, exhibits callousness and thus is a violation of his Fourth Amendment rights. While Petitioner is factually correct in his assertion that 'Attachment B' had been omitted

---

[1] The Ninth Circuit has found overbreadth, however, where the warrant set no time limits and allowed seizure of "essentially all of the business's records, computer hardware and software, files, ledgers, and invoices"). *United States v. Kow*, 58 F.3d 423, 425, 427-28 (9th Cir. 1995).

from the March 7, 2007 search warrant provided to Mrs. Cox, the agents reasonably delayed the search until a copy of 'Attachment B' was faxed from the United States Magistrate's Court in Flagstaff to the agents. Only after the agents had received the fax and had presented 'Attachment B' to Mrs. Cox, was the search initiated.

Consistent with much of the analysis, the manner in which warrants are executed is also subject to a reasonableness review. *See Dalia v. United States*, 441 U.S. 238, 258 (1979); *United States v. Ankeny*, 490 F.3d 744, 751 (9th Cir. 2007). Determining whether the agent's actions were reasonable requires the Court to balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In examining whether the execution of the warrant was reasonable, it is proper to consider the purpose disclosed in the application for the warrant's issuance. *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir. 1978). Here, Petitioner has not produced any evidence to establish that the agents' conduct in searching the premises articulated in the warrant exceeded the scope of the warrant. *See United States v. Becker*, 929 F.3d 442, 446 (9th Cir. 1991) (holding that, where warrant authorized search of the defendant's premises, it was reasonable for officers to use a jackhammer to break up a concrete slab in the backyard in order to search for evidence underneath).[2]

Assuming, arguendo, that the search was initiated before the agents presented Attachment B to Mrs. Cox, a callous disregard for Petitioner's constitutional rights would not have been established unless the agents deliberately disregarded the requirements of Fed.

---

[2] Some examples that the Court has found to be unreasonable intrusions on an individual's Fourth Amendment Interests during the execution of warrants include agents cutting a mailbox off its post, jack-hammering the sidewalk and breaking a refrigerator, *San Jose Charter of the Hell's Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 974 (9th Cir.2005); breaking down doors the agents already knew were open, *Mena v. City of Simi Valley*, 226 F.3d 1031, 1041 (9th Cir. 2000); and ransacking a dentist's office, *Vonderahe v. Howland*, 508 F.2d 364, 366-67 (9th Cir. 1974).

R. Crim. P. 41 or the plaintiff was prejudiced. *United States v. Mann*, 389 F.3d 869, 874-76 (9th Cir. 2004); *United States v. Gantt*, 194 F.3d 987, 994-95 (9 Cir. 1999). Where the agents inadvertently omitted 'Attachment B', and consequently delayed the search until its arrival, there is no evidence that the agents acted deliberately or that Petitioner was prejudiced.

Furthermore, although Plaintiff argues that the agents "ransacked every corner of the premises" and "seized virtually every piece of paper found ...on the JoeKen premises" (Plaintiff's Petition, pg.10, lns. 13, 18), the agents contend that they only searched those places on the premises where property identified in the warrant would reasonably be found. The agents maintain that they identified a significant quantity of documents and records that did not meet the search warrant criteria and, accordingly, those documents and records were not seized.[3]

Finally, Petitioner contends that the government's seizure of tooling from Rotation Engineering is evidence of callousness. However, Petitioner represented to the government that he sold the tooling to another private citizen. Therefore, as noted by the government, Petitioner lacks standing to assert an infringement on his Fourth Amendment rights as they relate to the seizure of the tooling. It has been well established by the Supreme Court that "vicarious" or "target" standing does not exist with respect to asserting Fourth Amendment rights. *See Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (refusing to extend standing to a party who was not a "victim" of the search); *see also United States v. Taketa*, 923 F.2d 665, 669-70 (9th Cir. 1991) (holding that a defendant did not have standing to challenge a search of another defendant's office.) "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134. Petitioner has failed to establish that his legitimate expectation of privacy was violated by the search and seizure of Rotation Engineering.

---

[3] In order to ensure that there was an objective record of the condition of the premises, the agents took photos and video of the premises before the search.

The government argues that even assuming Petitioner has standing, the seizure was pursuant to a lawful consent search. Consent to search is an exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). To be valid, the consent need not come from the owner. *United States v. Matlock*, 415 U.S. 164, 171 (1974). The Supreme Court defined those with actual authority to consent to a search as those who possess "common authority over or other sufficient relationship to the promises of effects sought to be inspected." *Matlock*, 415 U.S. at 171. Common authority exists where there is mutual use of the property by persons generally having joint access or control for most purposes, such that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that another inhabitant or owner might permit the common area to be searched. *Id.* at 171 n. 7. Thus, assuming Joe Cox had an interest in the tooling, Rotation Engineering had common authority over the tooling in the process of manufacturing firearms. Consequently, because Rotation Engineering had common authority over the premises and tooling and thus actual authority to consent to the search of the premises and the seizure of the tooling, the seizure by ATF Agents of the tooling was pursuant to a lawful consent search.

Accordingly, the Court finds that Petitioner has failed to demonstrate a callous disregard for his constitutional rights during the execution of the search warrants or the consent search and seizure of Petitioner's property.

### (2) Individual Interest in and Need for the Property

It is undisputed that Petitioner has an individual interest in and need for the property seized by the government.

### (3) Irreparable Injury

Petitioner contends that the direct result of the April 12, 2006 seizure of sheet metal flats and AKM main body shells, as well as the May 3, 2006 surrender of tooling by Rotation Engineering, has been to eliminate JoeKen's main product line, thereby decreasing JoeKen's

gross sales by more than one million dollars. Furthermore, since the April 12, 2006 seizure, JoeKen has lost half of its employees.

Petitioner claims that the government's retention of documents has and records has made it nearly impossible to operate JoeKen on a day-to-day basis.  He alleges that he has been denied records he needs to pay utility bills, taxes, his suppliers, and to fill orders. Furthermore, the March 6, 2007 seizure of JoeKen's database of more than 6,000 copies of existing customers' federal firearms licenses has allegedly had a direct impact on JoeKen's sales. Because any existing JoeKen customer who is a federally licensed firearms dealer must, as a result of the seizure, submit to JoeKen a new copy of his or her federal firearms license before an order can be shipped, and because each retail customer who orders by telephone, or over the internet, must submit a new copy of the federal firearms license for the dealer who will receive the firearm, a number of JoeKen customers have, according to Petitioner, decided doing so is too much trouble and have chosen to take their business to JoeKen's competitors, causing irreparable injury to Petitioner.

As to Petitioner's need to pay bills, taxes, suppliers, and the like, Petitioner is not barred from doing so merely because the government allegedly has possession of JoeKen's business records.  The government's possession of such documents certainly would not justify nonpayment of such bills, just as if the bills had been misplaced or inadvertently disposed of, Petitioner might have contacted the necessary individuals, organizations, and or agencies indebted to, to provide him with copies of necessary documents and or provisional remedies, to prevent any harm likely to occur from what could otherwise be an inability to determine the amount to be paid.  As to the claim of lost customers, the Court finds that  this may have been caused by a number of factors, not simply the inconvenience of having to once again provide JoeKen with a  new copy of the federal firearms license, because if a JoeKen customer were to take his or her business to a competitor, the customer would need to expend the same amount of energy providing the new business owner with his or her federal firearms license. Furthermore, in *Ramsden*, the Petitioner claimed that without

1   the return of the documents, he would suffer irreparable harm because he would be unable

2   to run his business, which would result in Ramsden being unable to support his family.

3   *Ramsden*, 2 F.3d at 325.  The district court discounted this contention, explaining that

4   Ramsden had failed to establish that copies of the documents would not suffice. *Id*.  The

5   Ninth Circuit subsequently affirmed. *Id*.  In the present matter, Petitioner has also failed to

6   establish that copies of the records would not satisfy the aforementioned business issues.[4]

7   Therefore, pursuant to the mandates of *Ramsden*, Petitioner has failed to demonstrate that he

8   has suffered irreparable harm as a result of the government's continued seizure of Petitioner's

9   property.  Notwithstanding, the parties should be able to reach an agreement regarding the

10  copying of many of the documents that are essential to the conduct of Plaintiff's business.

11          **(4) Adequate Remedy at Law**

12          Defendants argue that Petitioner has an adequate remedy at law because if formal

13  criminal proceedings are instituted, Petitioner will then have the opportunity to challenge the

14  legality of the search warrants, consent search, and seizures.  However, what Defendants fail

15  to acknowledge is that, as of now, there have been no formal charges brought.  Therefore,

16  there is no guarantee that Petitioner will in fact have an adequate remedy at law.

17                              **<u>CONCLUSION</u>**

18          Based on the documents filed thus far and the foregoing discussion, the Court finds

19  that it does not have jurisdiction to decide the merits of Petitioner's Rule 41(g) Petition.

20  Petitioner has failed to establish that the government exhibited callous disregard for his

21  constitutional rights, that he has a need for the original documents, or that he will suffer

22  irreparable harm if the property is not returned to him.  Petitioner has, however, demonstrated

23  that he has an individual interest in the property and that he does not have an adequate

24  _____

25      [4]The same applies to the tooling seized from Rotation Engineering.  Petitioner has
    failed to establish that other equipment and tooling could not perform equally as sufficiently
26  as the equipment seized.  In other words, Petitioner has not provided the Court with
    justification as to why he requires that particular tooling, and why any other tooling cannot
27  suffice (until the return of that tooling).

28                              - 10 -

remedy at law.  Despite this, the weight of the factors tilt in favor of the government and against reaching the merits of Petitioner's Rule 41(g) Petition.  *Ramsden*, 2 F.3d at 325. Consequently, the Court finds that Petitioner has failed to demonstrate the prerequisites necessary for this Court to exercise "equitable jurisdiction" to decide the merits of the Petition for Return of Property.

Accordingly,

**IT IS HEREBY ORDERED DISMISSING** the Rule 41(g) Petition for Return of Property (Doc.2).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall close the case.

DATED this 19th day of February, 2008.

Stephen M. McNamee
United States District Judge

- 11 -